Time to reserve two minutes in rebuttal. He issued before the court this morning, his letter in July of 2010. It was beyond debate, and no reasonable police officer could believe that the conduct of Detective Krueger during his brief getaways would have seen Colton Peterson run constitutional. In resolving that question, it reminded the court that Magistrate Judge Stoll said that the conduct of Detective Krueger did not constitute a 14th Amendment violation, and he was entitled to qualify immunity. Now, the district court disagreed with some of Judge Stoll's recommendations, including that he was entitled to qualify immunity. But with two very competent judges, some debate whether or not Detective Krueger was entitled to qualify immunity, that was healed on fair, noticeable warning that his actions conducted did constitute a constitutional violation. But also, as the court keep in mind, that in the Koehl v. Kennedy School District, that the 9th Circuit actually pointed out that Koehl's law surrounding the state-created banisher exception was, quote, somewhat scattershot, close quote. Now, that description certainly does not comply with the law going beyond debate. And obvious to every reasonable law enforcement officer. I mean, that's part of being in the 9th Circuit for all of us. You know, this is the largest circuit in the country. You know, the first circuit is from Somerset, Oregon. And I say this facetiously, but of course, there's going to be a scattershot approach. You know, there's so many different judges. I mean, there's going to be judges who look at things differently. Individual judges look at things differently. So in the 9th Circuit, of course, there's going to be some scattershot. Well, but the point being, if it's scattershot, what does that tell the law enforcement officer? I mean, does that mean that it's beyond debate, that every reasonable law enforcement officer has to take into account the size of the 9th Circuit and that the case precedence? No, but I mean, that means the lawyers arguing it before us don't try to show that to our throat, the fact that our jurors can be so much scattered, that's all. Well, I'm certainly not trying to shove it down your throat. What I'm trying to do is put you in the position of a law enforcement officer who's in that difficult position of deciding whether or not the law is clear on a particular point. For example, in this case, we actually need to decide what exactly was the alleged conduct by Detective Kruger that was unlawful or unconstitutional. Because there's no rule of law where you can find that a law enforcement officer is prohibited from questioning a suspect after he's been arrested, trying to obtain information from that suspect or trying to obtain information about other criminals. In fact, that's what we expect law enforcement officers to do. What's the rule of law that says a law enforcement officer essentially is prohibited from bargaining with the suspect for information about other criminals in exchange for providing a quote-unquote good word with the prosecutor? He was aware that the decedent was mentally ill and suicidal. Well, number one, he was not mentally ill. There's no evidence in the record that Paul Peterson was suicidal. No. Well, he was potentially suicidal according to his mother, the only source of information provided to Detective Kruger. So is it your position that that information was irrelevant? Of course it's not irrelevant. Because of that information, it required Detective Kruger to do an assessment of whether or not he was required to seek an involuntary commitment to the decedent before any further proceedings occurred. Based on his personal contacts with the decedent, as well as his training, he determined that he did not have probable cause to involuntarily detain the decedent because of circumstances which existed at the time. Keep in mind that that did not prohibit the decedent's mother or family members or girlfriend from seeking to do the very same thing. Well, that's not the issue for your client. That's the issue of what he knew and whether he pushed over the line and used to call it bargaining. If we look at the facts from the decedent's standpoint, he was bargaining, he was threatening, and he was literally frightened to death that he took his own life. That's the side of the decedent. So the fact that Kruger didn't have probable cause to put him in an institution doesn't answer that question. Well, it doesn't answer the question of what law existed that would allow Kruger to restrain his freedom or do anything beyond doing what he would normally do. But there is zero evidence in the record that he was a mentally ill patient. If he had suicidal, non-suicidal tendencies, whether you call it mentally ill, he had a defect that put him at risk of being triggered into committing suicide. That's their theory. That's their theory, but it's not supported by the evidence nor to consider any case law in the Ninth Circuit that would put Detective Kruger on notice that his dealings with Colton Peterson were clearly established as a constitutional violation at that point. That's the second part. The question is whether he committed a constitutional violation in the first instance. And then the question is, assuming he found an element he did, he would say, well, let me continue. It's not clearly established. That's interesting. I was trying to focus on the first. Focusing on the first, though, I think you're assuming facts that are not in the record. That's what I wanted to know. And the only evidence known to Detective Kruger, contrary to what's been argued in this case, is from Colton's mother that was communicated on the evening of July 26th once by Detective Gunther and then once in a telephone conversation. That's full scope of the knowledge that Detective Kruger had about what everybody has called this potential or unknown suicide risk. I dare you to read by the time. Give anyone a safe address on this. Thank you. Your Honors, may it please the Court, Quentin Rhodes on behalf of the Appellee Estate of Colton Peterson, the VSDU firm. The question of what Detective Kruger knew on the morning of July 27, 2010. That's the day that Colton died. He knew what the person closest to him knew, that is, Colton's mother, Janina Darling. He learned that when he talked to her on the evening of July 26th, the evening before he spoke to her on the telephone. She had told him that he was potentially suicidal. Isn't that right? That's right. She told him several things. She told him that Colton had been behaving erratically. He'd been waving guns at people. He'd been giving personal belongings away. He'd been talking about committing suicide. The other thing that she told him is that the family had tried to intervene and had tried to get him checked in for a mental evaluation and he had eluded them in that effort. So she was sort of desperate. She thought that because he was arrested, he was going to be put in jail. She told Detective Kruger, and this is in the record, in the supplemental record from 197 to 199, she told Detective Kruger that she wasn't going to bail Colton out because he was a danger to himself. She wanted him in jail. He tells her, well, you need to keep him out. And that's when they got into a heated exchange about whether he should be released. But all the officers did was what they always do, in my experience, is, as he said, use Colton's pickup for drugs, right? Yes. So I picked you up for drugs. Who's your dealer? Right. You've got to give me the names of the dealers or I'm going to have to put you in jail because you've been broken the law, right? And that's all he did. Well, you're at the point that it's all he did. What I mean is all he did is what the cops always do. They're always trying to get to the dealer. You've got to give me your dealer or some dealer. It's probably got to go down to some dealers. Well, he did that and he went a little bit farther. He tried to get Colton to help him do a clandestine drug buy. He wanted the names of other dealers. That's perfectly legitimate police work. There's no doubt about that. But he went farther than that after he learned of this fragile condition that Colton was in. I mean, is it potentially suicidal? Yes, absolutely. I mean, not potentially suicidal. So are you. So is everybody in the room. I'm potentially a fly fisherman. I'm potentially the president of the United States. I'm potentially a cop of state serving in a men's club. I mean, Rob's potentially everything. You're potentially something that's unwanted at all. Well, I don't disagree with that, Your Honor. I think that's correct. But in this particular case, Ms. Darling gave a bunch of specifics about what she knew about Colton, Detective Kruger. It wasn't that what he could commit suicide. It was the specifics. I think that's a mother's opinion. That's a doctor's opinion. It's that this kid is frantic. But, you know, it's bipolar. I'm making some rational diagnosis. But what would my mother say when I go to see somebody? You know, anybody's mother's going to say, Oh, don't look at my boy. Oh, he's fragile. He's an assaulting child. Whatever, baloney, baloney, baloney. I mean, well, if she didn't give specifics, I might not disagree with that, Your Honor, but she was specific in why she thought that he was suicidal, and she gave those instances. Furthermore, Detective Kruger didn't know Colton. He had just met him on the 26th, and so he didn't have any sort of independent basis to say, Well, I know this kid, and we've been talking about this for years, or I know this kid, and it's all overblown, or I know Ms. Darling, and she's out of her head half of the time. He didn't know anything about anybody. And so the person who knew Colton the best, his mother, is the one that described these facts about Colton, and not very many of them are complimentary. So what's the... Yes, Your Honor. The most recent case in that regard, the Hansby case, there was an authority that says it has to be beyond debate, but I would point the court to Kennedy v. City of Richfield. That case came out in 2006, and this court wrote as follows. Since 2006 is a long, long, long, long, there's the Reed v. White case, which is 2017 criteria. Well, Your Honor, if I could just read from Kennedy, it says, and it is an old case, so it's important that it's four years before the conduct in the Detective Kruger committed. This court said it is beyond dispute that in September of 1998, that is 12 years before the conduct in this case, it was clearly established that state officials could be held liable were they affirmatively and with deliberate interest placed an individual in danger she would not otherwise face. And so it is beyond dispute. It can't be debated. It's nice to know from the counsel that's too high a level of generality in light of the Supreme Court in person. It says after Kennedy v. White that the standards for what it takes to be clearly established in these police circumstances is very strict, and that's what I'd like you to address. Your Honor. It was so clearly established that then Kennedy could put this officer on notice that what he was doing was judging me and said engaging in sort of normal police behavior, trying to turn a defendant into an informant. Your Honor, we look forward to, for example, the Maxwell case v. San Diego County, which was in 2013. In that case, the police delayed an ambulance and caused a gunshot wound victim to die where she probably wouldn't have otherwise. There was no precedent on the books that said the police can't delay ambulances. What the precedent said is what it said, and Kennedy still says it's that if a state actor takes an affirmative step, in other words, if he confronts someone that he knows is at risk of suicide and bullies them for information to the point that the suspect is reduced to tears, he has taken an affirmative step in the face of a known danger of suicide with deliberate indifference to that danger. In this case, Detective Cougar was not trying to help Colton, just like in Maxwell, where the police officer was. He was trying to do his job. That's what he was trying to do. He was trying to generate information. Well, he was trying to scare information out of Colton. Yes, Your Honor. Before he made the judge Fisher's point, this is what the Supreme Court is hitting the Crime Sergeant with again and again and again. The only thing you can't just have generality. You've got to have specificity. Well, yes. That's what the, just as part of my description of the court, let's say that's what we've faced over the last 10 or 15 years, as Judge Fisher alluded to. Well, first of all, I won't endorse the Supreme Court's view of this court's jurisprudence in this regard. I think it's clear. I think that if a person, it's common sense, if a person is suicidal, you don't get in his face and start bullying him. You know he's suicidal, but, I mean, there's that, too. All he's got is the mother's opinion. You know, his mother's not in the potential that he's a great piano student. That doesn't mean that he's a piano student. He did. Within two hours of that bullying conversation. And remember, Ms. Darling begged Cougar for help. It wasn't offhanded. It was emotional. She was distraught, just like Colton was after he had that conversation with Det. Cougar. He got back to him. Anne Johns was with Colton after that conversation with the detective. And she didn't think he was going to commit suicide, did she? She found that he was distraught, that he was in tears, that he told her, that the detective told him if he didn't come up with some names by 5 o'clock, he was going, he wouldn't see her or his family ever again. But she knew about Colton's mental condition, and she didn't make the inference that you're saying the officer should have made. Isn't that right? Well, the officer should have just left me. Officers serve and protect. If they see someone on a list, they don't give the person more reasons to jump. They try to talk them out of it. You're saying basically, and I think I understand your argument, he knew enough to put him on notice. He should have known. He was dealing with a fragile person, and that if he, let's say, bullied him into a state where he was breaking down, he knew, he should have known and it was clear that as a result of his over-aggressive behavior, that is true, that he had violated his constitutional rights. That was going to be the standard, and that's the category that you fit into. Yes, sir. If I may just close on that. It's not that we have to show that Hoover intended for Colton to die. I don't say that, but he should have known that he put him at risk and that he should have backed off well before he did. Yes, sir. That's what we asked the court to affirm. Your Honor, in response to the argument about Kennedy, I think as Justice Fischer correctly points out, Kennedy is a general statement of the law. It isn't what the Supreme Court has required from the courts today, specifically in White v. Pauli, which was decided in January of this year. The Supreme Court founded the 10th Circuit when it decided to deny qualified immunity to a law enforcement officer when it, quote, failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment. Now, even though we're dealing with the 14th Amendment here, it's the same analysis. And the Supreme Court pointed out in White that general statements of the Fourth Amendment law are insufficient to deny qualified immunity, and that's the same thing we're dealing with in this case. I'd also point out that this is a terribly tragic and regrettable situation, but this court has actually recognized that you can have unfortunate situations between law enforcement and victims, but the principles of qualified immunity still apply in the Hamby v. Hammond case. This court said that the further afield existing precedent lies from the case under review, the more likely it will be that the official facts will fall within that vast discernment of conduct that is perhaps regrettable, but is at best arguably constitutional. So that is even that much can be said for the officials they're entitled to qualified immunity. I appreciate your acknowledgement of this tragic case. Thank you. Thank you, both sides, for your very helpful arguments. Case is submitted.
judges: Fisher, Friedland, Mahan